**\*\*E-filed 07/30/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GUNNAR CARLSSON, et al.,

        Plaintiffs,

  v.

THE MCGRAW-HILL COMPANIES, INC,

        Defendant.
_____/

No. C 10-0323 RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs in this action are two Stanford University mathematics professors who lent their names, reputations, and editorial input to three high school and elementary mathematics text books under written royalty agreements with the publisher, defendant the McGraw-Hill Companies. McGraw-Hill paid royalties under the agreements from 2003 through 2008. Then, in May of 2009, McGraw-Hill took the position that the agreements called for royalties *only* on copies of the textbooks that had been published in 2003 and that bore that copyright date. McGraw-Hill offset the alleged overpayments against royalties due plaintiffs under another, separate, contract, and demanded that plaintiffs contact it to make arrangements for repaying an additional sum of approximately $135,000 each. This action followed.

McGraw-Hill now moves to dismiss contending that the plain language of the royalty agreements defeats all of plaintiffs' claims as a matter of law. Because the language of the contracts is not unambiguous as McGraw-Hill contends, the motion will be denied.

II. BACKGROUND

Plaintiffs Gunnar Carlsson and Ralph L. Cohen aver that they are affiliated with Stanford University and are "well-known in educational circles in California, including the State of California Board of Education." They argue that by employing them as consultants on its textbooks, McGraw-Hill more easily secured the adoption of its texts by the boards of education in California and other states.

This case involves two specific royalty agreements, both entered into in March of 2002, covering a total of three textbooks. The first agreement, entitled "Author's Agreement Glencoe/McGraw Hill" pertains to high school algebra textbooks known as "*Algebra 1 and Algebra 2 © 2003, Student Editions*" (the "Algebra Contract"). The second agreement bears the same title, but relates to an elementary and high school text known as "*Pre-Algebra © 2003*" (the "Pre-Algebra Contract"). The two contracts contain virtually all of the same substantive provisions. Despite their titles as "Author's Agreement(s)," there is no dispute that neither plaintiff was expected to draft any of the texts or to create substantial content for them. Rather, plaintiffs were to provide "Contributions," consisting of submitting "written reviews" of the textbooks.[1]

A preamble to the Pre-Algebra Contract explains that McGraw-Hill was the existing publisher and copyright holder of a "Previous Work" entitled "*Pre-Algebra © 1997*" and that it sought to "prepare a revision of the Previous Work." The Algebra Contract similarly identifies McGraw-Hill's goal to revise "Previous Works" known as "*Algebra 1 and Algebra 2*," although no copyright date for the "Previous Works" is specified.

---

[1] Although not spelled out in the agreements, it appears undisputed that these "reviews" were to be pre-publication editorial comments and suggestions, not post-publication "reviews" in the sense of third-party book reviewer commentary on the merits and weaknesses of a work.

2

Under both contracts, plaintiffs were to receive a royalty of 1% on all sales of "the current edition of the Work," subject to certain exceptions for returns and particular kinds of sales. Plaintiffs were to receive a half-percent royalty on any sales of "new media versions" of the Work-- i.e. copies distributed as computer software, CD-ROM, or in other electronic media. The agreements also provided for plaintiffs to receive a half-percent royalty on any "softcover or inexpensive hardcover pupil editions of the Work *published more than one year after the regular print edition*." (Emphasis added.)

Under both contracts, McGraw-Hill expressly reserves the right to use plaintiffs' "Contributions" in any "revision or future editions of the Work[s]." Moreover, the contracts expressly provide that: "No royalties shall be paid on any revision or future editions of the Work, even if the Contribution, in whole or in part, is included in such revision or future editions of the Work[s]."

The controversy in this case arises from the fact that the agreements do not expressly define the meaning of "revision or future editions of the Work[s]." McGraw-Hill takes the position that because the agreements define "Works" with reference to the specific copyright date of 2003, then any "version" or "edition" it might publish bearing a different copyright date, regardless of the nature or extent of any changes in the text, constitutes a new version or edition on which no royalties would be owed. Plaintiffs, on the other hand, aver that the post-2003 "versions" or "editions" of the texts contained only the most trivial of changes from the 2003 edition, and therefore do not constitute new versions or editions within the meaning of the contracts.[2]

## II. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

---

[2] The First Amended Complaint avers that the post-2003 textbooks are identical to those bearing a 2003 copyright as to layout, chapter listings, chapter text, and problems presented. In their brief, plaintiffs acknowledge that some photographs are different, and that some graphs differ in "form," but not in content. The brief asserts that the 866 pages of text are the same.

3

absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir.2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In evaluating a motion to dismiss, the Court may consider matters incorporated in the complaint, such as the copies of the contracts attached to the complaint here. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (2010).

## III. DISCUSSION

A. <u>Breach of contract</u>

The parties are in agreement that the Algebra Contract and the Pre-Algebra Contract are both governed by Ohio law. The authorities they cite do not disclose any significant differences between Ohio precedents and general principles of the common law applicable to contracts, the parol evidence rule, and the torts of intentional and negligent misrepresentation. McGraw-Hill's motion to dismiss is premised on its strident assertion that there is no ambiguity on the face of the agreements, and that it would therefore be error to look to any extrinsic evidence to interpret the phrase "revision or future editions of the Work[s]."

Although plaintiffs have conceded that the "versions" of the textbooks published after 2003 contain at least some minor changes from the 2003 "edition," McGraw-Hill does not place heavy

4

emphasis on any such changes. Rather, McGraw-Hill appears to rely on the fact that by merely releasing "versions" or "editions" of the textbooks bearing a post-2003 copyright date, regardless of the nature or degree of any changes therein, the literal obligation to pay royalties under the agreements was extinguished.[3]

McGraw-Hill's argument rests solely on the fact that each agreement defines "Work" by reference to a 2003 copyright date. Even without resort to extrinsic evidence, however, ambiguities appear on the face of the contracts as to what the parties intended when they agreed that royalties would not be payable on any "revision or future editions of the Work[s]." First, as emphasized in the quotation above of the provision providing for a half-percent royalty on "softcover or inexpensive hardcover pupil editions of the Work," those royalties were payable when such editions were "published more than one year after the regular print edition." See Algebra Contract and Pre-Algebra Contract, ¶ 2(g). Thus, the contracts expressly contemplate that, at least with respect to softcover and inexpensive hardcover "editions" of the "Work," something published long after 2003 would still "count" as the "2003" edition. Similarly, the contracts provided for a half-percent royalty on "new media version(s)" of the texts. See Algebra Contract and Pre-Algebra Contract, ¶ 2(b). Here, too, the agreements treat something other than the "Work" as McGraw-Hill would have that term narrowly defined as giving rise to a right to royalties.

Not only do both of these provisions extend royalty payments beyond McGraw-Hill's narrow definition of "Work," if all of the contract provisions are read literally and narrowly, they create a conflict with the general provision in paragraph (1)(b) of each agreement that they are "applicable only to *this edition* of this Work." (Emphasis added.) Paragraphs 2 (b) and (g) on their face govern something other than "this edition," as McGraw-Hill reads that term, thereby creating ambiguity as to what the parties actually intended by "edition" or "version."[4]

---

[3] McGraw-Hill argues that plaintiffs have mistakenly assumed that it contends it is liable only for royalties on textbooks *sold* in 2003, as opposed to all texts bearing that copyright date, even if sold in later years. It is not clear that plaintiffs in fact made such an assertion, but in any event it is now clear that McGraw-Hill at a minimum acknowledges a responsibility to pay royalties on copies of the texts dated with a copyright of 2003, regardless of when sold.

[4] McGraw-Hill will be free to attempt to establish that these provisions were intended as specific *exemptions* to the general rule that, under its interpretation of the contracts, no royalties are payable

Second, McGraw-Hill, takes the position that under paragraph 3(c) of the agreements, plaintiffs *consented* to the use of their "name[s], approved likeness[es] and biograph[ies]" on what it contends were subsequent "editions" of the "Works" on which no royalties were owed.[5] As noted, however, paragraph 1 (b) provides that the agreements govern only "this edition." By on the one hand contending that anything not bearing a 2003 copyright is a new "edition" or "version" on which no royalties are owed, but on the other hand arguing that plaintiffs' consent under agreements expressly applicable only to "this edition" also extends to those later "editions" or "versions," McGraw-Hill has graphically demonstrated that the agreements are *not* free from ambiguity.[6]

Relying solely on its insistence that the contracts are unambiguous, McGraw-Hill does not challenge plaintiffs' authorities that *if* there is ambiguity, a trier of fact may look to numerous sources to determine the parties' intent. Of particular relevance here is the principle that when parties "by their acts and conduct in the performance of the contract over a reasonable period of time adopted one [of two or more] interpretations" of ambiguous terms, "the interpretation so adopted will be given to those words." *State ex rel. Burgess & Niple v. Linzell*, 93 N.E.2d 9, 12, 153 Ohio St. 545, 552 (1950). At the motion to dismiss stage, of course, the Court cannot conclusively interpret the contract. Nevertheless, the fact that for some five years McGraw-Hill operated under an apparent understanding of the contracts that is contrary to the one it now advocates, and that it paid out approximately $650,000 dollars under that interpretation, strongly

---

for anything other than the exact original "version" or "edition" of the works published in, and bearing a copyright date of, 2003. The availability of that argument, however, does not eliminate the ambiguity created by these provisions.

[5] McGraw-Hill may be attempting to shoehorn a right to continue using the plaintiffs' names, likenesses, and biographies into the fact that it has the right to use their "contributions" in subsequent "editions" even without payment of royalties. While such an interpretation of the agreements might be viable, it is not one free from ambiguity.

[6] Additionally, the Pre-Algebra Contract, entered into in 2002, revealed that a "revision" to a © 1997 edition was being prepared. Although it may not be expressly alleged or appear explicitly on the face of the agreement that McGraw-Hill ever published "versions" of that edition bearing post-1997 copyright dates, there is a reasonable inference that it may have been McGraw-Hill's practice to refer to "editions" or "revisions" by the copyright date that the first text in substantially similar form was released.

counsels against concluding as a matter of law that its present construction of the contract terms is the only correct one.[7]

B. <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

McGraw-Hill correctly points out, and plaintiffs do not seriously dispute, that absent circumstances not present here, a breach of the covenant of good faith and fair dealing claim rises or falls with a breach of contract claim. While McGraw-Hill may therefore be technically correct that there is no viable "separate" claim for breach of the covenant, in view of the conclusion that plaintiffs have stated a contract claim, dismissal of this claim is unnecessary.

C. <u>Intentional Misrepresentation</u>

Plaintiffs' allegations of intentional misrepresentation assert that they were assured they would continue to receive royalties until there was a "substantial or major revision" to the textbooks at the heart of the parties' agreements. McGraw-Hill moves to dismiss on grounds that the parol evidence rule bars introduction of representations contrary to the express terms of an integrated written agreement. While the claims of misrepresentation may otherwise be thin, as set out above, the contracts are not unambiguous as McGraw-Hill contends, and there is no necessary contradiction between the alleged representations and the contract terms. Accordingly, the motion to dismiss this claim for relief is denied.

D. <u>Negligent Misrepresentation</u>

McGraw-Hill's moving papers challenged the negligent misrepresentation claim with the same parol evidence arguments it presented regarding the intentional misrepresentation claim. In opposition, plaintiffs argue that their negligent misrepresentation claim rests not on the same alleged

---

[7] McGraw-Hill complains that there is nothing it could have done to make more clear its right to publish "revisions" or "editions" of the work without continuing to pay royalties. Among other things, McGraw-Hill could have defined what constitutes a new "edition" or "revision." Merely defining "Work" by reference to a particular title and a copyright date creates uncertainty in light of the other contractual provisions discussed above.

7

misrepresentations alleged to be intentional, but on the entirely distinct factual basis that McGraw-Hill purportedly misled them *by conduct* in making royalty payments from 2004 through 2008. In reliance on those payments, plaintiffs contend, they paid taxes on the funds, spent the funds, and honored their commitment under the agreements not to undertake competing work while receiving royalties.

It is far from clear that these allegations necessarily state a viable claim for negligent misrepresentation *per se*. The facts alleged, however, may give rise to some right to relief under equitable or other doctrines. At least in the absence of a motion directed at the actual allegations made in this claim, there is no basis to dismiss.

E. California Civil Code §3344

As an alternative claim for relief, plaintiffs contend McGraw-Hill misused their names and identities in violation of California Civil Code §3344. Plaintiffs recognize that if they prevail on their claim that they are entitled to royalties on post-2003 "versions" of the textbooks, this claim will not be viable. For the reasons set forth in section A above, the contracts do not unambiguously support McGraw-Hill's contention that plaintiffs consented to the use of their names, likenesses, and biographies in "editions" or "versions" for which they are not entitled to royalties.

McGraw-Hill further argues that plaintiffs' claim is time-barred because the complaint only expressly identifies a 2005 "version" of the textbooks as containing plaintiffs' names. The complaint, however, generally alleges that post-2003 "versions" have continued to use plaintiffs' names and identities.

Additionally, while the parties' respective arguments have not been sufficiently developed to permit a conclusive determination on the point, plaintiffs aver that not until 2009 did McGraw-Hill ever take the position that plaintiffs are foreclosed royalties on post-2003 "versions" of the textbooks. Although the precise doctrine under which this might preclude application of the statute of limitations is unclear, plaintiffs should be permitted to pursue a claim based on the use of their

names and identities even as far back as 2005, given that there was no dispute over their right to compensation until 2009.[8] Accordingly, the motion to dismiss this claim for relief is denied.

F. Declaratory relief

McGraw-Hill's motion to dismiss plaintiffs' claim for declaratory relief is derivative of, and dependent on, its arguments that plaintiffs have not otherwise stated a viable claim. Although it is not clear that the declaratory relief claim adds anything of substance, it is not otherwise subject to dismissal and accordingly, the motion will be denied.

## IV. CONCLUSION

The motion to dismiss is denied. Defendants shall file an answer within 20 days of the date of this order.

Dated: 07/30/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[8] McGraw-Hill also suggests it had certain implied contractual rights to use plaintiff's names. Given the contractual ambiguities and the fact that the scope of the use is not revealed on the face of the pleadings, these issues are not subject to resolution on a motion to dismiss.